UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARRIS L. WINNS,<br><br>                    Plaintiff,<br><br>        v.<br><br>LOUIS DEJOY,<br><br>                    Defendant. | Case No.  21-cv-04264-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 48 |

  Plaintiff Harris Winns, who is representing himself in this matter, sues Louis DeJoy in his capacity as the Postmaster General of the U.S. Postal Service ("USPS")[1] for alleged employment discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-16.  USPS now moves pursuant to Rule 56 for summary judgment.  Mr. Winns opposes the motion.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants USPS's summary judgment motion.[2]

# I. BACKGROUND

  Unless otherwise indicated, the following material facts are undisputed.

## A. 2014 Termination and MSPB Appeal

  Mr. Winns is Black and a Christian (Methodist).  Dkt. No. 49 ¶ 3, Ex. B (Dkt. No. 49-2 at ECF 3).  He previously was employed by USPS in various non-career[3] capacities since 2011, and

---

[1] For simplicity, the Court refers to defendant as "USPS."

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 4, 16.

[3] According to USPS, employees with non-career titles are deemed part-time employees who may

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1   most recently as a non-career Postal Support Employee Sales and Services/Distribution Associate

2   at the Seven Trees Carrier Station in San Jose, California.  Dkt. No. 48 ¶ 3.[4]  In September 2014,

3   Mr. Winns requested that he not be scheduled to work on Sundays, for religious reasons.  Dkt. No.

4   1 ¶ 12; Dkt. No. 47 ¶ 4.  Around this time, USPS began Sunday package delivery service for

5   Amazon.com.  Mr. Winns's manager, Rose Dyer Sothdam, says that she told him that due to the

6   anticipated volume of packages on Sundays, all carriers would be required to work on those days.

7   Dkt. No. 47 ¶ 4.  Ms. Sothdam further states that she offered to schedule Mr. Winns's Sunday

8   hours so that he could attend church, but that there was no realistic possibility that he would have

9   been permitted to take every Sunday off.  *Id*.; *see also* Dkt. No. 48 ¶ 19, Ex. I (Dkt. No. 48-9 at

10  ECF 3).

11         After Mr. Winns did not report for work on two Sundays, USPS designated him Absent

12  from Work without Approved Leave ("AWOL").  Dkt. No. 47 ¶ 5.  When Mr. Winns did not

13  report for work on two additional Sundays, USPS issued a Notice of Removal dated October 3,

14  2014, stating that his employment would be terminated effective November 7, 2014 for failure to

15  follow instructions, irregular attendance, and being AWOL.  *Id*. ¶ 5, Ex. A (Dkt. No. 47-1); *see*

16  *also* Dkt. No. 1 ¶ 12, Ex. A.  Claiming that Mr. Winns refused to obey instructions, used profanity

17  and left during his work shift, USPS subsequently issued a second Notice of Removal dated

18  October 30, 2014, stating that his employment would be terminated, effective November 30, 2014,

19  for unacceptable conduct and failure to follow instructions.  Dkt. No. 47 ¶ 5, Ex. B; Dkt. No. 1

20  ¶ 12, Ex. B.

21         In lieu of contacting an equal employment opportunity ("EEO") counselor and filing a

22  complaint, on December 7, 2014, Mr. Winns filed a mixed case appeal with the Merit Systems

23  Protection Board ("MSPB") challenging his 2014 termination and alleging discrimination based

24  on his race and religion, as well as retaliation for prior EEO and union activities.  Mr. Winns also

25  _____

26  be scheduled for less than eight hours per service day or less than 40 hours per normal work week.
    *See* Dkt. No. 48 ¶ 3.

27  [4] Although Mr. Winns objects that USPS submitted no declaration from Cheryl Cavanaugh in
    support of its summary judgment motion, the docket confirms that Ms. Cavanaugh's declaration
28  was filed on August 30, 2022 and electronically delivered to all parties.  *See* Dkt. No. 48.

United States District Court
Northern District of California

alleged harassment and a hostile work environment and claimed that he was denied a promotion. *See Winns v. U.S. Postal Serv.*, No. SF-0752-15-0165-I-1, 2015 WL 2127208, ¶ 2 (M.S.P.B. May 7, 2015); *see also* 29 C.F.R. § 1614.302(b) (providing, in relevant part, that "[a]n aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 C.F.R. 1201.151, but not both.").  On January 26, 2015, an MSPB administrative judge dismissed the appeal for lack of jurisdiction on the ground that Mr. Winns did not allege that he completed the one year of continuous service required to establish jurisdiction over his appeal.  *Winns*, 2015 WL 2127208, ¶ 3; *see also* Dkt. No. 48 ¶ 12, Ex. B (Dkt. No. 48-2 at 1).  That decision was upheld by the full Board on May 7, 2015.  *See Winns*, 2015 WL 2127208, ¶¶ 5, 6.

Mr. Winns filed a petition with the Office of Federal Operations ("OFO"), the appellate arm of the Equal Employment Opportunity Commission ("EEOC"), for review of the MSPB's May 7, 2015 decision.  *See* Dkt. No. 48 ¶ 12, Ex. B (Dkt. No. 48-2).[5]  On March 8, 2016, the OFO denied Mr. Winns's petition and remanded the matter to USPS.  *Id.*; *see also Winns (Salvatore B) v. U.S. Postal Serv.*, No. SF No. SF-0752-15-0165-I-1, 2016 WL 1085154 (E.E.O.C. Mar. 8, 2016).  Because Mr. Winns initially elected to file an MSPB appeal rather than initiate EEO proceedings, the OFO instructed USPS to notify Mr. Winns "of the right to contact an EEO counselor within forty five (45) days of receipt of this decision, and to file an EEO complaint," stating that "[t]he date on which [Mr. Winns] filed the appeal with the MSPB shall be deemed the date of the initial contact with the EEO counselor."  Dkt. No. 48, Ex. B (Dkt. No. 48-2 at ECF 3); *see also* 29 C.F.R. § 1614.302(b) (providing, in relevant part, that "[i]f a person files a mixed case appeal with the MSPB instead of a mixed case complaint and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to

---

[5] Mr. Winns also filed an action in this district for review of the MSPB's dismissal of his case. The Court's records reflect that his action was dismissed and transferred to the Federal Circuit on October 30, 2015.  Mr. Winns appealed the district court's decision to the Ninth Circuit, but later voluntarily dismissed that appeal on March 18, 2016.  *See Winns v. Merit Sys. Protection Bd.*, No. 15-cv-02313-HRL, Dkt. Nos. 50, 59; *see also Winns v. Merit Sys. Protection Bd.*, No. 15-cv-02313-HRL, 2015 WL 6602518 (N.D. Cal. Oct. 30, 2015).  On June 11, 2018, the Federal Circuit affirmed the MSPB's dismissal.  *See Williams v. Merit Sys. Protection Bd.*, 892 F.3d 1156 (Fed. Cir. 2018).

1    contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint,

2    subject to § 1614.107.").

3       **B.    2015 Reinstatement and Termination**

4       Meanwhile, USPS sent Mr. Winns a letter dated March 24, 2015, stating that the October

5    3, 2014 and October 30, 2014 removal notices were rescinded and would be expunged from his

6    personnel file.  Dkt. No. 47 ¶ 6, Ex. C (Dkt. No. 47-3).  USPS's legal department says that the

7    March 24, 2015 letter resulted from a review of Mr. Winns's 2014 removal, in which it was

8    determined that USPS did not seek volunteer substitutes to work on Sundays in place of Mr.

9    Winns, and therefore may not have properly evaluated his request to not work on Sundays.  Dkt.

10   No. 50 ¶¶ 3, 4.  The letter further advised that USPS would pay Mr. Winns back pay and benefits

11   for the period that he was off work, excluding any dates taken for personal reasons and accounting

12   for any unemployment benefits received during the time period of the removal actions.  Dkt. No.

13   47 ¶ 6, Ex. C (Dkt. No. 47-3).  To that end, the letter requested that Mr. Winns complete and

14   submit an enclosed PS Form 8038, noting "[i]f you do not timely complete and return the PS Form

15   8038, you will be deemed to have waived your right to collect back pay."  *Id*.  Finally, the letter

16   instructed Mr. Winns to report back to work on March 30, 2015, at which time he would receive

17   his work duties and schedule.  *Id*.  The letter also provided contact information if he had any

18   questions about the letter or how to complete the PS Form 8038.  *Id*.

19      Mr. Winns disputes that USPS validly rescinded the October 2014 removal notices and

20   reinstated his employment.  He contends that the October 2014 removal notices were not "fully

21   rescinded" because the March 24, 2015 letter did not give certain assurances regarding his

22   employment, including that he would not have to work on Sundays.  Dkt. No. 53 at 7-9.  In his

23   complaint filed with this Court, Mr. Winns states that "if it was true that the USPS offered him an

24   opportunity to return to work, he would have gleefully done so."  Dkt. No. 1 ¶ 47.  However, in

25   his summary judgment opposition, Mr. Winns argues that the March 2015 reinstatement of his

26   employment is invalid because no reasonable person would agree to return to employment at

27   USPS without assurances that, among other things, he would not be required to work on Sundays.

28   Dkt. No. 53 at 8.  He acknowledges that he did not communicate his concern to USPS or ask for

United States District Court
Northern District of California

1   clarification about his work schedule.  *See* Dkt. No. 49 ¶ 2, Ex. A (Winns Dep. at 87:1-88:8).

2        Mr. Winns did not respond to the March 24, 2015 letter and did not return to work on

3   March 30, 2015.  Dkt. No. 47 ¶ 8.  USPS sent Mr. Winns a second letter dated April 2, 2015,

4   stating that he was considered AWOL and noting that he had not been at work since March 30,

5   2015 and failed to provide documentation justifying his continued absence from work.  *Id.* ¶ 9, Ex.

6   D (Dkt. No. 47-4).  The letter directed Mr. Winns to contact USPS immediately upon his receipt

7   of the letter and, within five days of his receipt of the letter, to submit acceptable evidence of his

8   inability to report to work.  *Id.*  Mr. Winns did not respond to the April 2, 2015 letter.  *Id.* ¶ 12.

9        USPS sent Mr. Winns a third letter dated April 10, 2015, instructing him to report on April

10  14, 2015 for an investigative interview to discuss his AWOL status.  Dkt. No. 47 ¶ 13, Ex. F (Dkt.

11  No. 47-6).  The letter warned that "[a] failure to attend this investigative interview and/or a failure

12  to immediately return to duty will result in your removal from the Postal [S]ervice."  *Id.*  Mr.

13  Winns did not respond to the April 10, 2015 letter.  Nor did he appear for the April 14, 2015

14  investigative interview.  *Id.* ¶ 15.

15       A few weeks later, USPS sent Mr. Winns a Notice of Proposed Removal, dated May 4,

16  2015.  *Id.* ¶ 16, Ex. G (Dkt. No. 47-7).  The notice advised that USPS proposed to terminate his

17  employment "no sooner than 30 calendar days from the date of [his] receipt of this notice" based

18  on his AWOL status and failure to comply with the instructions in the March 24, 2015, April 2,

19  2015, and April 10, 2015 letters.  *Id.*  The notice informed Mr. Winns that he could review the

20  material USPS relied on to support the reasons for the notice and that he could answer the notice,

21  within 10 calendar days from his receipt of the notice, either in person or in writing, including any

22  affidavits or written material.  *Id.*  The notice further advised Mr. Winns that he had 14 days from

23  his receipt of the notice in which to file a grievance concerning the proposed removal.  *Id.*  USPS

24  says that Mr. Winns did not ask to review any documents or to set a meeting to challenge the

25  proposed removal.  *Id.* ¶ 17.

26       On July 9, 2015, USPS issued a Letter of Decision to Mr. Winns, advising that his

27  employment would be terminated effective July 15, 2015, due to his continued AWOL status and

28  failure to follow instructions in the March 24, 2015, April 2, 2015, and April 10, 2015 letters.  *Id.*

United States District Court
Northern District of California

¶ 18, Ex. H (Dkt. No. 47-8).  The letter stated that USPS believed Mr. Winns did not have the right to appeal the termination decision directly to the MSPB, but that if he believed otherwise, he had 30 days from his receipt of the Letter of Decision to file such an appeal.  *Id*. (Dkt. No. 47-8 at ECF 4).  The letter otherwise informed Mr. Winns that if he believed the termination decision was "based on discrimination because of race, sex, religion, color, national origin, age, disability, or genetic information" or "made in retaliation for [his] complaining or opposing discrimination or [his] participation in any process designed to remedy discrimination," he could challenge the termination by filing a formal complaint with USPS.  *Id*. (Dkt. No. 47-8 at ECF 5).  If he chose this option, the letter stated that Mr. Winns "must notify [USPS] of [his] challenge within 45 days of the [July 15, 2015] effective date of this decision by calling [a phone number] and first participate in informal counseling with an EEO counselor."  *Id*.  Mr. Winns did not file an appeal with the MSPB within 30 days or initiate contact with an EEO counselor within 45 days.  *Id*. ¶ 18.  As discussed below, the record reflects that Mr. Winns did not contact an EEO counselor about the 2015 termination until about nine months later, on April 4, 2016.

### C.     Subsequent EEO and EEOC Proceedings

As discussed above, on March 8, 2016, the OFO remanded Mr. Winns's then-pending appeal regarding his 2014 denial of religious accommodation and removal actions and instructed USPS to process those claims and to notify Mr. Winns of his right to contact an EEO counselor regarding those claims.  Dkt. No. 48 ¶ 12, Ex. B (Dkt. No. 48-2 at ECF 3).[6]  USPS sent Mr. Winns such a notice dated April 1, 2016.  Dkt. No. 48 ¶ 13, Ex. C (Dkt. No. 48-3 at ECF 14).  On April 4, 2016, Mr. Winns initiated contact with an EEO counselor for the first time since his July 2015 termination.  *Id*. (Dkt. No. 48-3 at ECF 2).  Records indicate that Mr. Winns complained about the 2014 removal actions, alleging "discrimination on the basis of race, religion and retaliation when

---

[6] Mr. Winns argues that USPS incorrectly contends that he filed an appeal with the EEOC in March 2016, noting that he did not file an appeal with the EEOC until August 2017.  *See* Dkt. No. 53-2 ¶¶ 3-4; Dkt. No. 53-4 ¶ 2; Dkt. No. 58 at 2.  USPS does not so contend, and Mr. Winns appears to be confusing his December 2014 appeal to the MSPB with his subsequent August 2017 appeal to the EEOC.  As discussed above, the record reflects that in March 2016, the OFO remanded Mr. Winns's prior appeal regarding the 2014 denial of religious accommodation and removal actions to USPS.  Mr. Winns presents no evidence to the contrary.

on October 17, 2014 and prior, Supervisor Christina Balcazar denied him reasonable religious accommodation by not giving him Sundays off." *See id*. (Dkt. No. 48-3 at ECF 2-14).  Mr. Winns also complained that he subsequently was terminated in July 2015 after he did not report for work. *See id.* (Dkt. No. 48-3 at ECF 2).

Mr. Winns filed a formal EEO complaint on July 9, 2016, alleging discrimination based on race, religion, and retaliation, as well as a hostile work environment.  The complaint was based on events leading up to the 2014 removal notices and termination.  Dkt. No. 48 ¶ 14, Ex. D (Dkt. No. 48-4).

On August 25, 2016, USPS issued a "Partial Acceptance/Partial Dismissal of Formal EEO Complaint." *Id*. ¶ 15, Ex. E (Dkt. No. 48-5).  USPS accepted for investigation Mr. Winns's claims based on USPS's 2014 denial of his request for religious accommodation and the 2014 removal actions. *Id*. (Dkt. No. 48-5 at ECF 2-3).  USPS interpreted Mr. Winns's complaint as also including a claim of discrimination and retaliation based on the July 2015 termination.  USPS dismissed that claim as untimely, stating that his request for pre-complaint counseling was made more than 45 days after the effective date of the July 2015 termination. *Id*. (Dkt. No. 48-5 at ECF 3-6).  USPS informed Mr. Winns that the dismissal of that claim could not be appealed at that time, but that "[i]f [he] disagree[d] with [USPS]'s reasons for dismissing this issue," he could "raise [his] objections with the Administrative Judge in the event that [he] request[s] a hearing on [his] complaint[.]" *Id*. (Dkt. No. 48-5 at ECF 5).  If Mr. Winns did not request such a hearing, USPS informed him that "the issue will be decided in [USPS]'s final agency decision on the complaint[.]" *Id*.

Mr. Winns did not request a hearing with an administrative judge.  Instead, around May 31, 2017 he requested a final agency decision.  Dkt. No. 48 ¶¶ 16, 21 Exs. F (Dkt. No. 48-6) & K (Dkt. No. 48-11 at ECF 4); *see also* 29 C.F.R. §§ 1614.108(f), 1614.110(b).  USPS issued its final agency decision on July 6, 2017. *Id*. ¶ 17, Ex. G (Dkt. No. 48-7).  With respect to the claims regarding the 2014 denial of religious accommodation and removal actions, USPS concluded that Mr. Winns did not establish that he was subjected to discrimination or retaliation. *Id*. (Dkt. No. 48-7 at ECF 17).  With respect to the claim regarding the July 2015 termination, the final agency

United States District Court
Northern District of California

1    decision incorporated USPS's dismissal of that claim as untimely.  *Id*. (Dkt. No. 48-7 at ECF 2).

2          Around July 31, 2017, Mr. Winns submitted an appeal of USPS's final agency decision,

3    which was received by the EEOC in August 2017.  Dkt. No. 48 ¶ 18, Ex. H (Dkt. No. 48-8).  In

4    that appeal, Mr. Winns addressed his 2014 claims of discrimination and retaliation.  He mentioned

5    USPS's March 24, 2015 letter rescinding the October 2014 removal notices and reinstating his

6    employment.  *Id*. (Dkt. No. 48-8 at ECF 17, 19).  However, he did not challenge the final agency

7    decision dismissing his claim relating to the July 2015 termination.  *See id*., Ex. H (Dkt. No. 48-8);

8    *see also* Dkt. No. 48 ¶ 21, Ex. K (Dkt. No. 48-11 at ECF 4).

9                    **1.      The EEOC's February 5, 2019 Decision**

10          On February 5, 2019, the EEOC issued its decision on Mr. Winns's appeal of USPS's final

11    agency decision.  Dkt. No. 48 ¶ 19, Ex. I (Dkt. No 48-9).  With respect to the 2014 denial of

12    religious accommodation and removal actions, the EEOC found that Mr. Winns established

13    discrimination and retaliation.[7]  *Id*. (Dkt. No. 48-9 at ECF 4-7).  The EEOC ordered USPS to take

14    remedial action.  Relevant to the discussion below, the EEOC ordered that within 60 days from the

15    date of its decision, USPS must (1) retroactively reinstate Mr. Winns to the position he would

16    have held absent the unlawful discrimination and retaliation; (2) conduct an investigation to

17    determine whether Mr. Winns is entitled to compensatory damages; and (3) determine the

18    appropriate amount of back pay, with interest, and other benefits due to Mr. Winns.  As to this last

19    requirement regarding back pay and benefits, the EEOC directed Mr. Winns to "cooperate in

20    [USPS]'s efforts to compute the amount of back pay and benefits due" and to "provide all relevant

21    information requested by [USPS]."  *Id*. (Dkt. No. 48-9 at ECF 8).  In the event of a dispute

22    regarding the amount of back pay or benefits, the EEOC ordered USPS to issue a check to Mr.

23    Winns for the amount USPS believes is due, and informed Mr. Winns that he could petition the

24    EEOC for enforcement or clarification of the amount in dispute.  *Id*.  USPS was also directed to

25    submit to the EEOC a report of compliance with the ordered remedial relief.  *Id*. (Dkt. No. 48-9 at

26

27    _____

[7] The EEOC did not address the remaining allegations of Mr. Winns's complaint, noting that a
finding on those additional bases would not entitle him to any greater relief.  Dkt. No. 48 ¶ 19, Ex.
28    I (Dkt. No. 48-9 at ECF 7 n.4).

ECF 9).

The EEOC further advised Mr. Winns that the February 5, 2019 order was "a decision requiring [USPS] to continue its administrative processing of [his] complaint." *Id*. (Dkt. No. 48-9 at ECF 11).  However, the EEOC noted that if Mr. Winns wished to file a civil action, he had to do so within 90 days from the date of his receipt of the February 5, 2019 decision, or after 180 days from the date he filed his complaint with USPS or filed his appeal to the EEOC. *Id*.  The EEOC further noted that the "[f]iling [of] a civil action will terminate the administrative processing of [Mr. Winns's] complaint." *Id*.

### 2.     The EEOC's March 9, 2021 Enforcement Decision

The parties disputed the computation of back pay and benefits due to Mr. Winns.  Around December 3, 2019, Mr. Winns submitted a petition for enforcement with the EEOC.  Dkt. No. 48 ¶ 20, Ex. J (Dkt. No. 48-10).  In that petition, he disputed USPS's contentions that it had reinstated his employment in March 2015 and that the relevant period for back pay was October 25, 2014 through March 30, 2015.  *Id*. (Dkt. No. 48-10 at ECF 3); *see also id*. ¶ 21, Ex. K (Dkt. No. 48-11 at ECF 3).  Mr. Winns's petition for enforcement indicates that in August 2019, USPS sent him letters stating that the agency had repeatedly tried to obtain necessary information to process his back pay and benefits, namely completed PS Forms 8038 and 8039.  *Id*. ¶ 20, Ex. J (Dkt. No. 48-10 at ECF 3).  His petition does not indicate whether he provided the requested information.

On March 8, 2021, the EEOC issued its enforcement decision regarding Mr. Winns's back pay, benefits, and interest.  Dkt. No. 48 ¶ 21, Ex. K (Dkt. No. 48-11).  The EEOC noted that long before it issued its February 5, 2019 decision, by letter dated March 24, 2015 USPS rescinded the October 2014 removal notices and instructed Mr. Winns to return to work on March 30, 2015.  *Id*. (Dkt. No. 48-11 at ECF 3).  Further noting that Mr. Winns did not challenge the July 2015 termination in his appeal of USPS's July 2017 final agency decision, the EEOC found that the July 2015 termination remained effective and had not been overturned.  *Id*. (Dkt. No. 48-11 at ECF 4).  In view of these intervening events, the EEOC stated that with respect to its February 5, 2019 remedial order, "compliance with the order means reinstating [Mr. Winns] on paper retroactive to the effective date he was removed in connection with the October 3 and 30, 2014 removal notices

1    up to his third removal on July 15, 2015."  *Id*.  Further, the EEOC stated that USPS was not

2    required "to ignore [Mr. Winns's] July 15, 2015 removal and offer to return him to work."  *Id*.

3        With respect to the relevant period for back pay, the EEOC noted that there was

4    insufficient information in the record to determine whether the pay period began on October 22,

5    2014 (the day Mr. Winns claimed was the last day he worked) or October 25, 2022 (the date USPS

6    claims Mr. Winns was last in pay status pending his October 30, 2014 removal).  The EEOC

7    directed USPS to supplement the record with documentation relevant to determining the proper

8    start date.  *Id*.  However, the EEOC disagreed with Mr. Winns's contention that he is entitled to

9    back pay until the effective date USPS offers to return him to work (which Mr. Winns claimed had

10   not yet happened).  Instead, the EEOC found that the back-pay period runs through March 30,

11   2015, the date USPS claimed Mr. Winns failed to return to work after being reinstated and began

12   his AWOL status.  *Id*.  The EEOC further found that USPS had been unable to calculate back pay

13   because Mr. Winns did not comply with the agency's requests to return back-pay statement forms.

14   *Id*. (Dkt. No. 48-11 at ECF 5).  Finding that the delay in calculating back pay was Mr. Winns's

15   fault, the EEOC concluded that interest on back pay and benefits stopped accumulating on

16   September 26, 2019.  *Id*.  Within 60 days of the EEOC's enforcement decision, USPS was ordered

17   to (1) amend Mr. Winns's personnel record to reflect that he was reinstated to the job he would

18   have had but for the October 2014 removals, up through the July 15, 2015 termination; (2) provide

19   Mr. Winns with another opportunity, in writing, to complete the necessary back-pay statement

20   forms; and (3) supplement its back-pay calculations with documentation supporting the date in

21   October 2014 (i.e., October 22, 23, 24, or 25) USPS determined is the start of the back-pay period.

22   *Id*.

23       The EEOC informed Mr. Winns that if USPS did not comply with the March 8, 2021

24   enforcement order, he could petition the EEOC for enforcement.  *Id*.  The EEOC further advised

25   Mr. Winns that he also had the right to file either a civil action to enforce the EEOC's order or to

26   file a civil action on his underlying complaint for discrimination and retaliation.  The EEOC noted

27   that if Mr. Winns chose to file a civil action, he had 90 days from the date he received the

28   enforcement decision to do so, and that "filing a civil action will terminate the administrative

United States District Court
Northern District of California

10

processing of [his] complaint." *Id*. (Dkt. No. 48-11 at ECF 5, 6).

### 3.       The EEOC's April 15, 2021 Decision

Meanwhile, disputes also arose between the parties regarding USPS's calculation of compensatory damages. The record reflects that in April 2019, USPS determined that Mr. Winns was entitled to $10,000 in non-pecuniary compensatory damages related to the 2014 denial of religious accommodation and removal actions. *See* Dkt. No. 1 ¶ 57, Ex. D. Mr. Winns appealed that determination to the EEOC, contending that he was entitled to $120,000 in damages. *Id*. The record also indicates that Mr. Winns told the EEOC that he returned a $10,000 check he received from USPS "due to its overwhelming delinquency[.]" *Id*. at ECF 36; *see also* Dkt. No. 48 ¶ 20, Ex. J (Dkt. No. 48-10 at ECF 4).

On April 15, 2021, the EEOC issued a decision on Mr. Winns's appeal, concluding that Mr. Winns was entitled to $30,000 in non-pecuniary compensatory damages, plus $20 for pecuniary damages. Dkt. No. 1 ¶ 57, Ex. D at ECF 35. The EEOC thus ordered USPS to pay Mr. Winns a total of $30,020 within 60 days from the date of its April 15, 2021 decision. *Id*. at ECF 36. The EEOC informed Mr. Winns that if USPS did not comply with the April 15, 2021 order, he could petition the EEOC for enforcement. *Id*. The EEOC further noted that Mr. Winns also had the right to file either a civil action to enforce the EEOC's order or to file a civil action on his underlying complaint for discrimination and retaliation. The EEOC noted that if Mr. Winns chose to file a civil action, he had to do so within 90 days from the date of the April 15, 2021 decision (or, alternatively, after 180 days from the date he filed his complaint with USPS or filed his appeal with the EEOC). The EEOC further noted that the "[f]iling [of] a civil action will terminate the administrative processing of [Mr. Winns's] complaint." *Id*. at ECF 37-38.

USPS claims that it paid Mr. Winns $30,020 in May 2021. *See* Dkt. No. 46 at 7 n.1. Mr. Winns has not asserted any argument or submitted any evidence to the contrary. The record before this Court reflects that the EEOC issued a notice to Mr. Winns, dated August 18, 2021, stating that compliance monitoring with respect to compensatory damages had ceased because USPS provided the EEOC with sufficient documentation demonstrating its compliance with the EEOC's order. *See* Dkt. No. 17, Ex. B (Dkt. No. 17-2 at ECF 8).

United States District Court
Northern District of California

### D.    Procedural History

Mr. Winns filed the present action in this Court on June 4, 2021.  His complaint states that this lawsuit is an "'Independent action' . . . being brought due to the Plaintiff's right to file a civil action in District Court within ninety (90) days of the date of the EEOC's Order."  Dkt. No. 1 at 1. However, Mr. Winns's pleading is styled as a Rule 59 "Motion to Alter or Amend a Judgment" or "Relief from a Judgment or Order" and expressly seeks "enforcement" of the EEOC's February 5, 2019 remedial order and "relief" from the EEOC's subsequent March 8, 2021 enforcement order. *See* Dkt. No. 1 ¶ 52.  Additionally, he alleged that USPS did not comply with the EEOC's April 15, 2021 order to pay $30,020 in compensatory damages.  *See id*. ¶¶ 56-59.  Mr. Winns does not take issue with the EEOC's findings that USPS discriminated and retaliated against him with respect to his 2014 request for religious accommodation and the October 2014 removal actions. But he contends that the EEOC should not have credited the USPS's March 24, 2015 notice rescinding the 2014 removal notices and directing him to return to work.  He maintains that he was not actually reinstated by USPS in March 2015, and therefore could not have been terminated in July 2015, and that the 2015 notice of removal and termination are USPS fabrications that constitute unlawful discrimination and retaliation.  *See, e.g., id*. at 2, 4, 6-13.  In Mr. Winns's view, the period for back pay, benefits, and interest properly begins on October 18, 2014, and remains open-ended through the present time.  *See id*. ¶¶ 54, 55.

USPS moved pursuant to Rule 12(b)(6) to dismiss Mr. Winns's complaint, arguing that Mr. Winns's claim concerning compensatory damages is moot and that his Title VII claim for discrimination based on the July 2015 termination failed because he did not exhaust his administrative remedies.[8]  Dkt. No. 17.  The Court granted USPS's motion to dismiss with respect to the payment of the $30,020 compensatory damages, in view of undisputed records

---

[8] Although USPS's motion was also brought pursuant to Rule 12(b)(1), the agency acknowledged that the Title VII administrative exhaustion requirement is not jurisdictional in nature.  *See* Dkt. No. 19 at 2 n.1; *see also Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (stating that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts.").  Accordingly, the Court construed USPS's motion to dismiss as one brought solely pursuant to Rule 12(b)(6) for failure to state a claim for relief.  *See* Dkt. No. 29 at 2.

demonstrating that USPS had paid that sum to Mr. Winns.  *See* Dkt. No. 29 at 9.  Broadly construing Mr. Winns's complaint as claiming that the 2015 termination constituted unlawful discrimination and retaliation under Title VII, the Court denied without prejudice USPS's motion to dismiss that claim, noting the complaint's allegations disputing Mr. Winns's receipt of documents concerning that termination.  *Id.* at 8.  The denial of USPS's motion to dismiss the Title VII claim was without prejudice to USPS to renew the issue on a motion for summary judgment.  *Id.*

The Court also denied Mr. Winns's then pending motion for leave to amend his complaint to add claims under the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.* and for alleged violation of his federal due process rights, as well as several state law claims for relief. *See id.* at 9-13.  Accordingly, the sole remaining claim before the Court is the one brought pursuant to Title VII.[9]

USPS now moves for summary judgment, renewing its argument that Mr. Winns did not timely initiate EEO counseling with respect to the 2015 termination and thus failed to administratively exhaust his Title VII claim.  Even assuming that Mr. Winns exhausted his claim, USPS contends that he failed to timely file the present action.  USPS maintains that the present action does not, in any event, properly seek enforcement of the underlying administrative proceedings and that Mr. Winns has not presented sufficient evidence establishing a prima facie case for discrimination or retaliation.

## II.     LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

---

[9] For the first time in his opposition to USPS's summary judgment motion, Mr. Winns claims that USPS defamed him.  *See* Dkt. No. 52 at 2-3, 21-22; Dkt. No. 53-9.  No such claim appears in the complaint, and Mr. Winns "may not amend [his] complaint through argument in a brief opposing summary judgment . . ."  *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1153 n.9 (N.D. Cal. 2007); *see also Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").  The Court will not consider or entertain any claim for defamation.

United States District Court
Northern District of California

burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See id*. at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp*., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id*.

## III.  DISCUSSION

### A.  De Novo Civil Action or Enforcement Action

The Court first addresses the question whether the present action is a de novo discrimination action against USPS or an action to enforce the EEOC's ordered remedies.

Under Title VII, an individual alleging that a federal agency engaged in employment discrimination must seek administrative adjudication of such claims. *See generally* 42 U.S.C. § 2000e-16. When an employee or job applicant initiates a complaint with the employing agency, the agency conducts an investigation. 29 C.F.R. § 1614.106. The complainant may request a

United States District Court
Northern District of California

hearing and a decision from an administrative judge, or may, as Mr. Winns did, request an immediate final decision from the agency.  29 C.F.R. §§ 1614.108(f), 1614.110(b).  The complainant may appeal the final agency decision to the EEOC, where the OFO issues a decision on the appeal.  29 C.F.R. § 1614.405.  "If the OFO issues a decision favorable to the employee, and the agency fails to comply with that decision, the employee can then file a petition for enforcement with the EEOC."  *Carver v. Holder*, 606 F.3d 690, 696 (9th Cir. 2010) (citing 29 C.F.R. § 1614.503(a)).  "The OFO must then ascertain whether the agency is in complete compliance with its prior order and issue a decision regarding the adequacy of the agency's response."  *Id*. (citing 29 C.F.R. § 1614.503(b)).  The OFO's decision on an appeal generally triggers the right to file a civil action in an appropriate district court.  *See* 29 C.F.R. § 1614.407.

Upon conclusion of the administrative process, a complainant who prevails on his claim may follow one of two avenues into federal court.  *Carver*, 606 F.3d at 696.  He may file an enforcement action against the agency.  In such an action, "the issue is not liability or the remedy, . . . but rather whether the federal employer has complied with the OFO's remedial order."  *Id*. (internal quotations and citation omitted).  Thus, in an enforcement action the complainant "may not challenge the OFO's decision regarding either discrimination or what it found to be appropriate remedies."  *Id*.  Alternatively, the complainant may choose to bring a de novo civil action against the agency, in which the parties must relitigate issues of liability (i.e., whether the agency acted in a discriminatory manner) and the remedy for any discriminatory conduct.  *Id*. at 696, 697.

There is some ambiguity in the record as to what Mr. Winns intended in filing the present action.  As noted above, certain allegations in his complaint suggest that the present lawsuit is an "independent action" in which he seeks a de novo determination regarding the 2014 denial of religious accommodation and removal actions and the 2015 termination.  *See, e.g.,* Dkt. No. 1 at 1; *see also, e.g., id*. ¶¶ 43, 44, 58.  Nevertheless, the Court cannot fairly construe the complaint as seeking such de novo review.  Mr. Winns does not take issue with the EEOC's findings of discrimination and retaliation based on the 2014 denial of religious accommodation and October 2014 removal actions or its determination that he is entitled to $30,020 in compensatory damages.

United States District Court
Northern District of California

1    Additionally, other allegations of the complaint clearly indicate that Mr. Winns seeks only to

2    enforce certain remedies ordered by the EEOC.  *See, e.g., id.* ¶¶ 20, 45, 49, 52, 54-57, 59, 69.

3    Moreover, the record indicates that USPS complied with the EEOC's April 15, 2021 order to pay

4    Mr. Winns $30,020 in pecuniary and non-pecuniary compensatory damages.  Mr. Winns has

5    offered no evidence to the contrary, or any evidence suggesting that he disputed the $30,020

6    award, or did not accept the $30,020 payment from USPS.  *See* Dkt. No. 1 ¶ 57, Ex. D; Dkt. No.

7    17, Ex. B (Dkt. No. 17-2 at ECF 8).

8         At the same time, however, the Court also cannot conclude that the present lawsuit

9    properly is brought as an enforcement action.  Mr. Winns's request to enforce the EEOC's April

10   15, 2021 order has been deemed moot.  As confirmed by the record presented and by Mr. Winns at

11   the hearing on the present motion, Mr. Winns received payment of the ordered compensatory

12   damages, and there does not appear to be anything further to enforce with respect to the payment

13   of compensatory damages.  *See* Dkt. No. 29 at 9; Dkt. No. 17, Ex. B (Dkt. No. 17-2 at ECF 8);

14   Dkt. Nos. 57, 58 (confirming receipt of compensatory damages).  Mr. Winns's complaint

15   otherwise seeks to enforce only selected portions of the EEOC's disposition of his claim.

16   Specifically, he wishes to enforce the EEOC's February 5, 2019 remedial order regarding back

17   pay, benefits and interest, but requests "relief" from the EEOC's subsequent March 8, 2021

18   enforcement order concerning those same remedies.  *See* Dkt. No. 1 ¶ 52.  However, the EEOC's

19   response to Mr. Winns's petition for enforcement "is as much a part of the administrative

20   disposition as is the remedial order itself," and a complainant bringing a civil enforcement action

21   cannot "selectively choose which aspect of the administrative disposition of his claim he wishes to

22   enforce."  *Carver*, 606 F.3d at 697.  Moreover, the EEOC's February 5, 2019 remedial order

23   directed USPS to "determine the appropriate amount of back pay, with interest, and other benefits

24   due [Mr. Winns]"; directed Mr. Winns to "cooperate in [USPS]'s efforts to compute the amount of

25   back pay and benefits due" and to "provide all relevant information requested by [USPS]"; and

26   seemed to contemplate that further proceedings may be necessary in the event the parties disputed

27   the amount of back pay and benefits due.  *See* Dkt. No. 48 ¶ 19, Ex. I (Dkt. No. 48-9 at ECF 8);

28   *see also Plaskett v. Wormuth*, 18 F.4th 1072, 1083-84 (9th Cir. 2021) (concluding that plaintiff

United States District Court
Northern District of California

failed to state a claim for a certain amount of additional back pay, based on an EEOC order that "plainly envisions that a *further* process will need to take place to determine what additional sum, if any, if due to [plaintiff].").  In subsequent enforcement proceedings, the EEOC noted that the proper start date of the period for back pay and benefits remained unclear.  But, in view of the intervening 2015 reinstatement of Mr. Winns's employment and subsequent termination, the EEOC stated that its February 5, 2019 remedial order did not require USPS to again offer to return Mr. Winns to work.  Further concluding that the delay in the calculation of back pay was Mr. Winns's fault, the EEOC concluded that the back pay period ended on March 30, 2015 and that interest stopped accumulating on September 26, 2019.  Dkt. No. 48 ¶ 21, Ex. K (Dkt. No. 48-11 at ECF 4-5).  In sum, based on the EEOC's administrative disposition as a whole, Mr. Winns has not demonstrated that there is an enforceable order for back pay beginning October 18, 2014 and continuing, open-ended, through the present, as requested in his complaint.  *See* Dkt. No. 1 ¶ 69.

Mr. Winns maintains that the EEOC's March 8, 2021 enforcement order is incorrect. Indeed, the crux of his complaint filed with this Court appears to be that the EEOC erroneously considered USPS's March 2015 reinstatement of his employment and subsequent July 2015 termination as valid bases to further define the scope of his remedies.  *See, e.g.,* Dkt. No. 1 ¶¶ 34, 35.  He contends that the 2015 reinstatement and July 2015 termination of his employment were, in themselves, unlawful discriminatory conduct concocted by USPS to reduce the damages owed as a result of the 2014 denial of religious accommodation and October 2014 removal actions.  *See, e.g., id.* ¶¶ 44, 45.  As noted above, the Court broadly construed these allegations as asserting an independent claim under Title VII based on the 2015 termination.  See Dkt. No. 29 at 7.  USPS contends that Mr. Winns's claim fails for failure to exhaust his administrative remedies and to timely file the present lawsuit.  The Court now turns to those arguments below.

**B.    Title VII Administrative Exhaustion Requirement**

As discussed above, there is no genuine dispute that Mr. Winns first contacted an EEO counselor on April 4, 2016, about 9 months after the effective date of the July 2015 termination and well beyond the 45-day deadline under 29 C.F.R. § 1614.105.  *See* Dkt. No. 48 ¶ 13, Ex. C (Dkt. No. 48-3 at ECF 2).  USPS contends that it is entitled to summary judgment on the ground

1    that Mr. Winns did not timely initiate contact with an EEO counselor regarding the 2015

2    termination and thus failed to exhaust his administrative remedies.

3          To bring a claim under Title VII, Mr. Winns must exhaust his administrative remedies.

4    *See* 42 U.S.C. § 2000e-16(c); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001).  As

5    noted above, while Title VII's claim-processing rules are non-jurisdictional, they are mandatory.

6    *Fort Bend*, 139 S. Ct. at 1851.  Complainants claiming discrimination by a government agency

7    "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be

8    discriminatory or, in the case of personnel action, within 45 days of the effective date of the

9    action." 29 C.F.R. § 1614.105(a)(1).  "Although it does not carry the full weight of statutory

10   authority, failure to comply with this regulation has been held to be fatal to a federal employee's

11   discrimination claim."  *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).  "This deadline

12   constitutes an administrative requirement that, like a statute of limitations, is subject to waiver,

13   estoppel, and equitable tolling."  *Id.* at 1105 n.5 (internal quotations and citation omitted); *see also*

14   29 C.F.R. § 1614.105(a)(2) ("The agency or the Commission shall extend the 45-day time limit in

15   paragraph (a)(1) of this section when the individual shows that he or she was not notified of the

16   time limits and was not otherwise aware of them, that he or she did not know and reasonably

17   should not have been known that the discriminatory matter or personnel action occurred, that

18   despite due diligence he or she was prevented by circumstances beyond his or her control from

19   contacting the counselor within the time limits, or for other reasons considered sufficient by the

20   agency or the Commission.").  "Whether a plaintiff in a Title VII action has timely exhausted h[is]

21   administrative remedies is an affirmative defense" and "the defendant bears the burden of pleading

22   and proving it."  *Kraus v. Presidio Tr. Facilities Div.*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009)

23   (internal quotation and citation omitted).

24         The Court previously denied USPS's motion to dismiss Mr. Winns's Title VII claim in

25   view of his complaint's allegations disputing that he received the 2015 notices and termination

26   letter—an apparent fact dispute that could not properly be resolved at that stage of the litigation.

27   *See* Dkt. No. 29 at 8; *see also* Dkt. No. 1 ¶¶ 34, 35, 39, 46, 65.

28         USPS now presents evidence indicating that Mr. Winns did, in fact, receive the 2015

United States District Court
Northern District of California

18

notices and letters regarding his reinstatement and termination.  *See* Dkt. No. 49 ¶¶ 2, 3, Ex. A (Winns Dep. at 82:19-83:13; 85:22-86:7; 88:20-89:21; 93:13-24; 95:18-98:1; 98:10-99:5) & Ex. B (Dkt. No. 49-2 at ECF 4).  It remains unclear exactly when Mr. Winns received the documents.  He testified in deposition that he does not remember the dates he received them, although USPS's evidence indicates that he received some documents contemporaneously with the date they were issued.  *See id.*  In any event, Mr. Winns no longer disputes that he received the documents, explaining that due to the passage of time, he simply forgot that he had received them.  *See* Dkt. No. 52 at 13.  Nor does he offer any argument or evidence creating a triable issue whether he timely initiated contact with an EEO counselor within 45 days from his notice of any of the 2015 events he claims constitutes discriminatory or retaliatory conduct, including the July 15, 2015 termination of his employment.  Instead, Mr. Winns offers several arguments why he was not required to comply the Title VII's 45-day presentment requirement or that his time to do so was tolled.

Mr. Winns appears to contend that he is entitled to equitable tolling based on the fact that he filed a mixed-case appeal with the MSPB regarding the 2014 denial of religious accommodation and removal actions.  Dkt. No. 52 at 10-11.  As discussed above, the unrefuted evidence in the record demonstrates that the MSPB upheld the dismissal of Mr. Winns's appeal on May 7, 2015.  And on March 8, 2016, the EEOC denied Mr. Winns's petition for review of the MSPB's dismissal decision and remanded the matter to USPS.  *See Winns*, 2015 WL 2127208, ¶¶ 3, 5, 6; *Winns (Salvatore B)*, 2016 WL 1085154 at *1; *see also* Dkt. No. 48 ¶ 12, Ex. B (Dkt. No. 48-2 at 1).  Mr. Winns appears to argue that because he could either file an appeal with the MSPB or file an EEO complaint (but not both) with respect to the 2014 denial of religious accommodation and removal actions, he was excused from initiating the EEO process with regard to the 2015 termination until after his MSPB appeal was remanded to USPS in March 2016.  Dkt. No. 52 at 10-11; *see also* 29 C.F.R. § 1614.302(b).  However, Mr. Winns's MSPB appeal concerned only the 2014 denial of religious accommodation and removal actions.  While the requirement to contact an EEO counselor with regard to those claims was tolled, *see* 29 C.F.R. § 1614.302(b), Mr. Winns's MSPB appeal did not encompass the subsequent events culminating

1   in the discrete, separate 2015 adverse termination action.  *See Blackman-Baham v. Kelly*, No. 16-

2   cv-03487-JCS, 2017 WL 679514, at *17 (N.D. Cal. Feb. 21, 2017) (construing the term "matter"

3   in 29 C.F.R. § 1614.302(b) to refer to the underlying employment action rather than the

4   discrimination claim).  "Discrete acts such as termination, failure to promote, denial of transfer, or

5   refusal to hire are easy to identify, [and] [e]ach incident of discrimination and each retaliatory

6   adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"

7   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "'[D]iscrete discriminatory acts

8   are not actionable if time barred, even when they are related to acts alleged in timely filed

9   charges[.]'"  *Lyons*, 307 F.3d at 1105-06 (quoting *Morgan*, 536 U.S. at 113).

10          Also misplaced is Mr. Winns's argument that, under 5 U.S.C. § 7121(d), no EEO

11   complaint regarding the 2015 termination properly could have been processed until after his

12   MSPB appeal was done.  *See* Dkt. No. 52 at 6, 11.  Section 7121(d), which concerns MSPB

13   review of arbitration decisions, does not apply to Postal Service employees.  *See Stahl v. Merit*

14   *Sys. Protection Bd.*, 83 F.3d 409, 411 (Fed. Cir. 1996); *accord Burke v. U.S. Postal Serv.*, 888

15   F.2d 833, 834-35 (Fed. Cir. 1989); *Bacashihua v. Merit Sys. Protection Bd.*, 811 F.2d 1498, 1502

16   (Fed. Cir. 1987).

17          Mr. Winns argues that the 45-day deadline to initiate EEO proceedings does not apply to

18   him because he contends that, having been removed from USPS employment in 2014, he was no

19   longer a USPS employee in 2015.  *See* Dkt. No. 52 at 12.  USPS correctly notes, however, that a

20   complainant need not have employee status in order to fall within the scope of Title VII or the

21   requirement to exhaust administrative remedies.  *See generally* 42 U.S.C. § 2000e-16; *Youssef v.*

22   *Pritzker*, No. CV 14-3629-PLA, 2015 WL 13916268,  at *9-10 (C.D. Cal. July 20, 2015)

23   (applying 45-day deadline to prospective employee).

24          Relatedly, Mr. Winns argues that he was not required to comply with the administrative

25   exhaustion requirement because, in his view, the 2014 removal actions were never validly or fully

26   rescinded.  Thus, he contends that USPS could not legitimately order him to return to work in

27   March 2015, unless he agreed to do so.  And, as discussed above, Mr. Winns argues that he would

28   not have agreed, and did not agree, to return to work, unless USPS gave him assurances that he

United States District Court
Northern District of California

United States District Court
Northern District of California

would not be required to work on Sundays.  *See* Dkt. No. 52 at 7-8.  Mr. Winns is not aided, however, by the MSPB decisions he cites, which concern the effect of an agency's reinstatement of employment on a pending MSPB appeal, and not the effect, if any, that a pending MSPB appeal has on an agency's ability to reinstate an employee.  *See Harris v. Dep't of Transp.*, 96 M.S.P.R. 487 (M.S.P.B. July 12, 2004); *Murray v. Dep't of Defense*, 92 M.S.P.R. 361 (M.S.P.B. Sept. 13, 2002); *Gillespie v. Dep't of Defense*, 90 M.S.P.R. 327 (M.S.P.B. Nov. 14, 2001).

Ultimately, Mr. Winns maintains that the July 2015 termination was nothing more than "a fabricated instrument that exists only in theory, but not in reality."  Dkt. No. 53-5 ¶ 2.  Here, he argues that errors in the USPS's EEO Alternative Dispute Resolution Specialist's Inquiry Report demonstrate that the report was concocted to create the appearance that the July 2015 termination was valid, when it was not.[10]  Dkt. No. 52 at 17; Dkt. No. 53-6.  He further suggests that the July 2015 termination must be fake because the EEOC's February 5, 2019 decision on his appeal of USPS's 2017 final agency decision does not mention it.  *See* Dkt. No. 53-5.  As discussed above, however, the unrefuted evidence in the record demonstrates that while Mr. Winns's 2017 appeal of USPS's final agency decision mentioned USPS's March 24, 2015 letter reinstating his employment, he did not challenge USPS's dismissal of the EEO claim relating to the July 2015 termination.  Dkt. No. 48 ¶ 18, Ex. H (Dkt. No. 48-8 at ECF 17, 19); *see also* Dkt. No. 48 ¶ 21, Ex. K (Dkt. No. 48-11 at ECF 4).  To the extent Mr. Winns maintains that the July 2015 termination was merely theoretical, it would appear that there is no adverse action on which to base a Title VII discrimination claim.

More fundamentally, none of Mr. Winns's arguments concerning the alleged invalidity of his 2015 reinstatement and termination support his contention that the Title VII exhaustion requirement did not apply or was tolled.  "The doctrine of equitable tolling has been consistently applied to excuse a claimant's failure to comply with the time limitations where [he] had neither

---

[10] For example, Mr. Winns notes that the "No" boxes are checked under "Mixed Case" and "MSPB Appeal Filed?"  Dkt. No. 52 at 17; Dkt. No. 53-6.  As acknowledged by Mr. Winns, however, by the time he initiated EEO counseling on April 4, 2016, his MSPB appeal had been dismissed.  *See* Dkt. No. 53-6 ¶ 3.  And as USPS points out, in March 2016, the EEOC remanded his "mixed case" to USPS and directed that it be processed as a "non-mixed" case.  *See Winns (Salvatore B)*, 2016 WL 1085154 at *1; *see also* Dkt. No. 48 ¶ 12, Ex. B (Dkt. No. 48-2 at 1).

actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotations and citation omitted).  Equitable estoppel, by contrast, focuses primarily on actions taken by the defendant to prevent a plaintiff from taking timely action.  *Id*.  While Mr. Winns points out that he is representing himself, he has not presented any argument or evidence raising a triable issue that he was not notified of the 45-day time limit or was not otherwise aware of it; that he did not know that the 2015 termination occurred; or that despite due diligence, he was prevented from timely contacting an EEO counselor.  *See* 29 C.F.R. § 1614.105(a)(2).  In the July 9, 2015 Letter of Decision, USPS told Mr. Winns that it did not believe he had the right to appeal the termination directly to the MSPB, and that if he claimed the termination was based on discrimination or retaliation, he had 45 days to notify USPS and participate in EEO counseling.  *See* Dkt. No. 47 ¶ 18, Ex. H (Dkt. No. 47-8 at ECF 4-5).  The Letter of Decision concerned Mr. Winns personally and followed a series of notices from USPS advising that he was considered AWOL and that his employment was in jeopardy.  Dkt. No. 47 ¶¶ 7, 9, 13, 16, 18 & Exs. C, D, F, G, H.  Each notice specifically informed Mr. Winns that his responsive action was required and when he was required to act, and the letters leading up to the May 2015 removal notice and July 2015 Letter of Decision specifically invited Mr. Winns to contact USPS to discuss any questions or concerns.  *See id*.  It is undisputed that Mr. Winns never responded to any of USPS's notices.  *See* Dkt. No. 47 ¶¶ 8, 12, 15, 17, 18.  But there is no indication that his failure to respond was due to any misconduct by USPS.  Instead Mr. Winns contends that he was justified in ignoring the notices because he did not want to return to work unless USPS gave assurances that, among other things, he would not have to work on Sundays.  *See* Dkt. No. 53 at 8.  However, Mr. Winns did not communicate that concern to USPS nor did he inquire about his work schedule.  *See* Dkt. No. 49 ¶ 2, Ex. A (Winns Dep. at 87:1-88:8).  In essence, the undisputed evidence shows that Mr. Winns did not respond to USPS's notices because he chose not to do so.

Accordingly, the Court concludes that there is no genuine issue of material fact that Mr. Winns failed to timely exhaust his administrative remedies as required by Title VII and that no tolling applies.  USPS's summary judgment motion as to this issue is granted.

### C.      Whether Mr. Winns Timely Filed the Present Lawsuit

Alternatively, USPS contends that it is entitled to summary judgment on the independent ground that the present action is time-barred because it was not filed within 90 days of USPS's final decision on Mr. Winns's 2015 discrimination claim.

Under Title VII, federal employees have "90 days of receipt of notice of final action taken by a department, agency, or unit referred to in [42 U.S.C. § 2000e-16(a)]" in which to file a civil discrimination action.  42 U.S.C. § 2000e-16(c).  The related regulation provides that "[a] complainant who has filed an individual complaint" may file a Title VII civil action in an appropriate United States District Court:

> (a) Within 90 days of receipt of the agency final action on an individual or class complaint;
>
> (b) After 180 days from the date of filing an individual or class complaint if agency final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407(a)-(d).  Equitable tolling applies, but only "'sparingly.'"  *Gray v. Shinseki*, No. C-12-03109 JCS, 2013 WL 1891387, at *2 (N.D. Cal. May 6, 2013) (quoting *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992)).  "Circumstances that have been found to give rise to equitable tolling include inadequate notice, a pending motion for appointment of counsel and the court leading a plaintiff to believe [he] has done everything required of [him]."  *Id.* (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).  However, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."  *Baldwin Cty.*, 466 U.S. at 151.  Additionally, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."  *Id.* at 15.  "A plaintiff's pro se status does not mean [he] should be treated differently than a plaintiff represented by counsel."  *Gray*, 2013 WL 1891387 at *3 (citing *Payan v. Aramark Mgmt. Servs. Ltd.*, 495 F.3d 1119, 1127 (9th Cir. 2007)); *see also Baldwin Cty.*, 466 U.S. at 152 (dismissing pro se plaintiff's untimely Title VII complaint).

1        With respect to Mr. Winns's EEO complaint regarding the 2015 termination, USPS

dismissed that claim as untimely.  *See* Dkt. No. 48 ¶ 15, Ex. E (Dkt. No. 48-5 at ECF 3-6).  After

Mr. Winns requested a final agency decision, USPS issued its final decision on July 6, 2017,

incorporating the dismissal of his claim regarding the 2015 termination as untimely.  *See id*. ¶ 17,

Ex. G (Dkt. No. 48-7 at ECF 2); *see also* 29 C.F.R. § 1614.107(a)(2).  USPS's dismissal of Mr.

Winns's claim concerning the 2015 termination therefore was a final decision appealable as of

July 6, 2017.  29 C.F.R. § 1614.107(b); *Puckett v. Potter*, 342 F. Supp. 2d 1056, 1066 (M.D. Ala.

2004) (where an agency dismisses some, but not all claims in a complaint, § 1614.107(b)

"contemplates that the agency's decision to dismiss is not considered final until the agency takes

final action on the remainder of the administrative complaint that was not dismissed.").  As

relevant here, USPS's final decision informed Mr. Winns that he had 30 days from his receipt of

the decision to appeal to the EEOC or 90 days from receipt of USPS's final decision in which to

file a civil lawsuit.  Dkt. No. 48 ¶ 17, Ex. G (Dkt. No. 48-7 at ECF 17-18).

        Mr. Winns timely appealed USPS's final decision to the EEOC.  While he mentioned

USPS's March 24, 2015 letter rescinding the October 2014 removal notices and reinstating his

employment, the record reflects that the only issues he challenged in that appeal concerned the

2014 denial of religious accommodation and removal actions.  He did not challenge USPS's

dismissal of his claim relating to the July 2015 termination.  *See* Dkt. No. 48 ¶ 18, Ex. H (Dkt. No.

48-8); *see also id.* ¶ 21, Ex. K (Dkt. No. 48-11 at ECF 4).  Thus, Mr. Winns had 90 days from

USPS's July 6, 2017 final decision to file a lawsuit regarding the 2015 termination.  *See Puckett*,

342 F. Supp. 2d at 1066.  The present action was not filed until four years later and is untimely.

        Mr. Winns has not presented a basis for tolling the deadline to file a civil action.  He

reiterates that because he filed an appeal with the MSPB, it should have been obvious to USPS

that he elected to pursue a non-EEO process and USPS therefore should have dismissed his entire

EEO complaint.  *See* Dkt. No. 52 at 14.  For the reasons discussed above, however, Mr. Winns has

not demonstrated that his MSPB appeal encompassed the subsequent 2015 termination.

Although he was informed of his rights to challenge USPS's dismissal of the 2015 termination

claim, Mr. Winns never did so.  *See* Dkt. No. 48 ¶¶ 17, 18, 21 & Exs. G, H, K.

Accordingly, the Court grants USPS's motion for summary judgment on the ground that the present action is time-barred.

Because the Court concludes that Mr. Winns failed to timely exhaust his administrative remedies with respect to his Title VII claim regarding the 2015 termination and failed to timely file the present action with respect to that claim, the Court finds it unnecessary to address USPS's arguments that Mr. Winns fails to establish a viable claim for discrimination or retaliation.

## IV.   CONCLUSION

Based on the foregoing, USPS's motion for summary judgment is granted.  The Clerk of Court shall enter judgment accordingly and close this file.[11]

**IT IS SO ORDERED.**

Dated: October 31, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California

---

[11] USPS's request to continue the previously scheduled final pretrial conference and trial dates (Dkt. No. 59) is denied as moot.